New-London,
July, 1837.

THE HARTFORD, NEW-LONDON, WINDHAM AND TOLLAND COUNTY SOCIETY FOR ESTABLISHING A TURNPIKE ROAD FROM THE CITY OF HARTFORD TO THE CITY OF NORWICH *against* HOSMER.

Turnpike Society
v.
Hosmer.

Where the charter of a turnpike company authorized the proprietors to erect and establish on their road two turnpike gates for the collection of tolls between certain *termini*, provided such gates should be established or affixed within nine miles of each other; the gates were removed, by the company, from the points at which they were originally placed, to other points on the road from a quarter to half of a mile distant, but no road intersected the turnpike road between those points; in an action brought by the company for tolls, it was held, 1. that the power of locating the gates given by the charter, was exhausted, when that power was once exercised, and consequently, the company had no power subsequently to remove the gates to other places; 2. that though there must be a real change of location to constitute a removal within the rule of law on this subject, yet under the circumstances of this case, such a change was effected; 3. that the company, therefore, had no right to collect tolls, at the removed gates, and could not recover.

THIS was an action of *assumpsit* for tolls; tried at *Norwich, March* term, 1837, before *Williams*, Ch. J.

At the session of the General Assembly, in *October*, 1795, *Joshua Lathrop* and others, on a petition preferred by them, for liberty to establish turnpikes on the stage road from the court-house in *Norwich* to the court-house in *Hartford*, through the towns of *Franklin, Lebanon*, part of *Hebron, Coventry, Bolton* and *East-Hartford*, and to collect tolls from travellers, to be applied to the reimbursement of the sums expended in repairing the road and to the keeping of it in repair, were constituted a corporation, by the name of "*The Hartford, New-London, Windham and Tolland County Society for establishing a Turnpike Road from the City of Hartford to the City of Norwich.*" By the charter, among other things, it was provided : " That as soon as said society shall have fully repaired said road, or expended thereon in repairs the sum of 4000 dollars, the said proprietors shall be, and they hereby are authorized to erect and establish two turnpike gates on said road between *White's* monument in *East-Hartford* and the dwelling-house of *Joshua Hyde* in *Franklin ;* provided turnpikes are not established or affixed within nine miles of each other; at which turnpikes the said society shall be, and they

are hereby authorized to collect the following tolls," &c.    In another section of the charter, it was provided : " That a meeting of said society shall be holden at the dwelling-house of *Daniel White* in *Coventry*, on the first *Tuesday* of *January* next, for the choice of necessary officers and for the purpose of establishing regulations."    On the application of the company to the General Assembly, in *May*, 1796, it was provided : " That when said society shall have repaired said highway from *White's* monument to *Joshua Hyde's* house in *Franklin*, said society shall have liberty, and they are hereby authorized, to erect and establish one turnpike gate at some intermediate place between said *White's* monument and *Joshua Hyde's* house, in addition to said two gates allowed by said former resolves ; at which turnpike gate said society shall and are hereby authorized to collect the same tolls as are allowed to be collected at either of the gates mentioned in said former resolve."    On the trial, it was admitted by the defendant, that his mail carriage had passed through the turnpike gates on the road, as claimed by the plaintiffs ; but he claimed to have proved, that the gates had been moved from the several points at which they were originally placed, from a quarter to a half of a mile.    The plaintiffs, on the other hand, claimed to have proved, that no road whatever crossed or intersected the turnpike road between the points where the gates were originally placed and the points at which they were placed at the time of the passing of the defendant's carriage ; and that the public travel, therefore, was in no manner affected, by the change of location.

The Chief Justice charged the jury, that the plaintiffs, in consequence of their having so changed the location of their gates, were precluded from a recovery in this action.    The jury accordingly returned a verdict for the defendant ; and the plaintiffs moved for a new trial for a misdirection.

*Strong* and *Foster*, in support of the motion, contended, 1. That the plaintiffs were not precluded, by their charter, from changing the position of their gates ; and that this case is distinguishable from *The State* v. *The Norwalk and Danbury Turnpike Company*, 10 *Conn. Rep.* 157.    First, in that case the gates were to be erected and established " on their road in the most convenient place."    This necessarily imported perma-

nency at *one place.* The present charter differs from that, by designating certain *termini* within which the gates are to stand, the only condition being that they must be nine miles apart. Secondly, the word "establish" in the present charter is defined; and taking the whole charter together, we must give terms the same meaning, which the legislature gave them. They have used "*affixed*" as a synonym to "*established;*" which shews, that they did not mean something permanent, unalterable. Again; the company were to meet for the purpose of "*establishing*" regulations. Will it be pretended, that these regulations were, like the laws of the *Medes* and *Persians,* unalterable? They were "*established;*" and "*established*" in the same sense that the gates were "*established.*"

2. That if the plaintiffs, under their charter, had no right to move their gates from the spot where they were originally placed, still there has not been a *removal* of the gates within the meaning of the law. A removal from one end of the toll-keeper's house to another, is, strictly speaking, a removal; the gate has been transferred from one point to another: but it will scarcely be claimed, that this constitutes such a removal as the law would take cognizance of; and that because the public travel is in no manner affected by the change. Such, precisely, is the character of the present removal. It is impossible that the public travel should have been affected by the change, as no road intersected the turnpike road between the points within which the gates were moved.

*Child,* contra, contended, That this case was governed by *The State* v. *The Norwalk and Danbury Turnpike Company.* Both charters were granted at the same session of the General Assembly; and the language used concerning the gates, is the same in both. The circumstance that no road comes in between the place where the gate was established and the place to which it was removed, makes no difference in principle. There may be houses, shops, mills, farms, &c. on the road between these places. The change here was not merely nominal, as from one side of the toll-gatherer's house to the other, but was substantial, being a distance of more than a quarter of a mile.

Turnpike So-
ciety
v.
Hosmer.

WILLIAMS, Ch. J.  The general principle, that when a turnpike company are authorized to locate their gates, and have located them, they cannot change such location at their pleasure, has been recently settled, by this court, in the case of *The State* v. *The Norwalk and Danbury Turnpike Company*, 10 *Conn. Rep.* 157.  That case received the deliberate consideration of this court; and we have seen no reason to retract or alter the opinion then given.

The position of the gates upon a turnpike road, is a matter in which the company, on one side, and the public, on the other, are deeply interested.  So far as the power of location is granted to the corporation, or its officers, so far are courts bound to support it.  But it is a power of that kind which can make no claim to be extended by implication.  Is there, then, any substantial difference between the case above referred to and this?  It is said, that the word " establish" in that charter, is much relied upon, in the opinion of the court.  It is true, that this word is alluded to, in that opinion, as aiding the construction given, though the principle decided, is, that the company having once fixed the location, the power given them is exhausted; and it is added, that the word " erect" would perhaps imply, that the gate was to be continued there.  But in this charter, as in that, the company are authorized to " erect and establish" gates, &c.  In this respect, there is, therefore, no real ground of distinction.

It is further said, that in this charter there is a restriction that the gates shall be within certain points, and not nearer than nine miles of each other.  It is not apparent how the fact that the discretion of the company was limited to the original location, will prove, that their powers were increased after that location; or that because, in one case, their powers were less than those of the *Norwalk and Danbury Turnpike Company*, therefore, they were greater in another.  But if it were so, it appears, that before this corporation went into operation, and to enable them to act, an alteration of the charter was procured, by which that restriction was removed, and they had a right to place the gates as near each other as they chose.

It is impossible for us to see any important distinction between the powers conferred by this charter and those of the company so often referred to; and the subject does not require, nor would it justify, nice and subtle distinctions.

The plaintiffs also claim, that there has been no such change as can be called a *removal* of the gate. We do not hesitate to say, there must be a real change of location. We have no idea that a change of the position of a gate-post would be a removal, nor perhaps a trifling amotion of the gate itself. But it does not follow, that there must be a road intersecting the turnpike between the places of the former and the present location. Although it is apparent, that many more persons would probably be affected, by such a fact; yet all the property, or at least all the property consisting of dwelling-houses, must be, in some measure, affected, by such alterations. It may be indeed slight; but still it is entitled to the protection of the law against a trifling injury, unless a fair construction of the charter authorizes the company to inflict it. Now, if a change of location in the distance of half a mile, is not a removal, because no road insersects, the same reason would hold, if there was no intersecting road for three or four miles; and of course, the relative position of a considerable tract of country, with regard to the gate, might be changed. We cannot, therefore, adopt this as a sound distinction; and we feel bound to say, that these gates have been removed. And while in this case, we see no reason to suppose the company have abused the power they claim to have, we think they have failed to shew, that they possessed it; and are, therefore, of opinion, that a new trial must be denied.

In this opinion the other Judges concurred, except HUNTINGTON, J., who gave no opinion, being related to one of the stockholders.

*New trial not to be granted.*