JANE L. AYRES v. THE PENNSYLVANIA RAILROAD COMPANY.

1. A dedication of land for public use as a highway may be made subject to a right to devote a part thereof to use for railroad purposes, and when such portion has been thus devoted, the use as a way will be suspended and remain suspended so long as that part is used for railroad purposes.

2. A conveyance of land abutting on such a highway, prior to the designation of a part for railroad purposes, will pass the grantor's title to the centre of the street, subject to the public easement and the reserved right to devote to use for railroad purposes.

3. The fact, that the railroad company which accepted from the owner a grant of a part of such land and devoted it to railroad use, after acts from which such a dedication of the whole would be inferred, had filed a survey of its route over the same land prior to the dedication, and that its charter prescribed that it should become seized in fee of lands taken by condemnation, did not deprive the owner of the power, or indicate his intent not, to thus dedicate; for the company could take less than a fee by purchase, and the perpetual and paramount right to use for railroad purposes thus acquired is not inconsistent with such dedication.

On error to the Supreme Court.

For the plaintiff in error, *B. A. Vail.*

For the defendant in error, *B. Gummere.*

The opinion of the court was delivered by

MAGIE, J. This writ of error brings up a judgment in favor of the Pennsylvania Railroad Company (which is the defendant in error) against Jane L. Ayres (who is the plaintiff in error), rendered in an action of ejectment brought by her to recover possession of a strip of land one hundred and twenty feet long by seven and one-half feet wide, lying within the lines of a public highway in Rahway, and occupied by a track of the railroad company.

The cause was tried without a jury, and the following facts appeared:

On June 4th, 1835, Louis B. Brown acquired title to a tract of land in Rahway. He laid out streets thereon, and divided it into two hundred and ninety-one building lots, and on November 4th, 1835, filed in county clerk's office a map showing the streets and lots.

One of the streets was delineated and marked as being one hundred feet in width, and its name, " Railroad Avenue," was printed in the centre of it. Along the centre ran parallel lines, and at one place were the words " Railroad Depot."

On October 22d, 1835, the New Jersey Railroad and Transportation Company, incorporated by act of the legisla-

ture of March 7th, 1832 (*Pamph. L., p.* 96), filed in the office
of the secretary of state a survey of the centre line of its rail-
road, which line over the Brown tract coincided with the
centre line of Railroad avenue.    That company had previ-
ously constructed its railroad to a point near the east line of
the Brown tract, and before August, 1836, had entered on
Railroad avenue in prosecuting the extension of the railroad
westerly.

On November, 1835, Brown made his first deed of lots,
and between the filing of his map and May 30th, 1837, had
made and delivered some thirty deeds for lots upon his tract,
and designated by reference to his map.

Plaintiff's title was acquired under some of those to whom
Brown conveyed such lots during that period.    Her deeds
convey to her lots fronting on Railroad avenue, and opposite
to the land in question.

By deed dated May 30th, 1837, Brown conveyed to the
New Jersey Railroad and Transportation Company a strip of
land in the middle of Railroad avenue, and extending for a
width of sixteen and one-half feet on each side of the centre
line.    Defendant has the rights acquired by that deed.

The land in question is not within the strip conveyed by
the last mentioned deed, but adjoins it, and lies between it
and lots of the plaintiff.    It does not, however, extend beyond
a line drawn midway between the strip conveyed by that deed
and the side of the avenue as originally laid out.

Plaintiff's deeds describe the lots conveyed as bounding on
the avenue, but there were no words therein excluding the
land within the avenue, and the contention was, that by an
established construction she acquired thereby title to land
under the avenue, including the land in question, subject only
to its use as a public highway.

Upon these facts, the learned justice who tried the cause
found that plaintiff had no title to the land in question, and
the judgment now under review was rendered on that finding.

The facts before the court below were substantially the same
as those which were considered in the Supreme Court in

*Samuel Ayres* v. *The Pennsylvania R. R. Co.,* 19 *Vroom* 44, and by this court in *S. C.,* 21 *Id.* 660. The only difference is, that in the case now in hand it was made to appear that the survey of the railroad route was filed before Brown had filed his map or made any deed of lots delineated thereon.

That fact was deemed by the court below to distinguish this from the case above cited, and to require a different result from that reached in that case by a divided court.

In the case above cited, a majority of the Supreme Court, upon the facts then appearing, held, that by Brown's acts a single street of one hundred feet in width was dedicated to be used as a public highway, subject to the devotion of a part of it for use for railroad purposes, and that when Brown conveyed to the railroad company, he designated the part which was to be thus used. It was also held that Brown's deed for lots fronting on Railroad avenue, made before his conveyance to the railroad company, passed his title to the centre of the avenue, subject, however, (1) to the use for railroad purposes of such part as should be designated, and (2) to the use of the whole as a highway, the former use being paramount to the latter so long as the designated portion was used for railroad purposes.

From the facts appearing in the case before us, it was held by the court below, that the previous filing of the railroad survey forbade the inference of such a dedication as the Supreme Court deemed to have been made, and this was put on the ground, that the railroad company, by their charter, had a right to acquire, not a mere easement, but a title in fee simple. From this added circumstance it was decided that Brown dedicated two roadways, one on each side of the strip conveyed to the railroad company, and that Brown's grantees of lots fronting on the avenue, and the railroad company as grantee of the centre strip, severally acquired title to the centre of each of these roadways, subject to the public easement. Upon this construction plaintiff's title does not extend over the land in question.

The argument here, in support of the conclusion below, maintains, (1) that after the filing of the railroad survey, Brown had no power to dedicate the whole one hundred feet in width as a public highway, and (2) that such filing and the attendant circumstances repel the inference of an intent to thus dedicate the whole width of Railroad avenue.

With respect to the first point thus made, it may be remarked, that it is well settled in this state that the filing of such a survey confers on a railroad company no title whatever. It has been held in the Court of Chancery not even to be notice to subsequent purchasers. *Central R. R. Co.* v. *Hetfield*, 3 *C. E. Gr.* 323. In this court, the right of· a subsequent purchaser to maintain an action of trespass against a railroad company occupying lands within such survey was established. *Hetfield* v. *Central R. R. Co.*, 5 *Dutcher* 571. What a railroad company acquires by a survey filed, is only the right to acquire title within its bounds, by purchase or condemnation.

The survey, in this case, indicated only the centre line of the route in courses and distances. By its charter the company could acquire sixty-six feet in width. What width it should take over the Brown tract was not fixed by the survey. It could only be fixed by the agreement of the owner or condemnation proceedings. *Hetfield* v. *Central R. R. Co.*, *ubi supra.* It was fixed by the acceptance of a deed for a width of thirty-three feet only. *Morris & Essex R. R. Co.* v. *Central R. R. Co.*, 2 *Vroom* 205 ; *Child* v. *Central R. R. Co.*, 4 *Id.* 323. In that width the railroad company acquired what right its grantor had. At the time its deed was accepted it must be conceded that Brown, its grantor, had done acts raising a conclusive presumption of the dedication of the whole of Railroad avenue, except so far as the dedication was controlled and limited by the indications on the map that part of that avenue was to be used for a railroad.

Now, while it is true that the charter of the New Jersey Railroad and Transportation Company, by section 6, provides that, upon condemnation, the company becomes seized and

possessed in fee simple of the lands condemned, yet condem-
nation was only to be resorted to when the lands had not been
donated to the company or purchased by it at an agreed price.
So, it is obvious that the company could, if it chose, acquire
by purchase just so much estate as was requisite for its pur-
poses, and was not bound to purchase more. Besides, it is
prescribed, by a proviso to that section, that, on an abandon-
ment or cesser of use for a certain period, lands acquired by
the company, whether "by concession or by inquisition," shall
revest in the person from whom the lands were taken, his
heirs and assigns. So that, if the thirty-three feet strip
through Railroad avenue had been taken by condemnation, I
think there would be no insuperable difficulty in holding that
the company acquired a fee, but on abandonment or cesser of
use, the prior dedication would attach.

But that strip was acquired by purchase, and Brown's prior
dedication being recognized, it is plain that the company
acquired everything necessary for its purposes, for his dedi-
cation was *cum onere*, and the use as a public highway was
subsidiary to the railroad use. The railroad company ob-
tained, by Brown's deed, a perpetual right to use the strip
granted for its purposes, with which use the dedication as a
highway did not interfere. It will not operate on the land
so granted until the railroad use is abandoned. Any other
construction will, it seems to me, lead to the conclusion that,
on the abandonment of the railroad, Brown, or his heirs, may
rightly enclose and build upon the strip of thirty-three feet
width in the centre of this avenue, which plainly was never
intended.

Such a dedication may well be accepted by the public. As
the railroad right is admittedly paramount to the easement as a
highway, the acceptance would not at all derogate from the
public grant to the railroad company.

What has been already said partially indicates my view of
the second point pressed in argument.

The presumption of the dedication of Railroad avenue as a
single street of one hundred feet in width, was before deemed

to arise, on the facts that Brown sold lots fronting thereon, and had delineated it on his map as a single street, with a single name, with a uniform and designated width, which extended over and included the portion which was indicated as intended for railroad use. In my judgment, that presumption is not repelled by the circumstance that the railroad company could then have acquired, by condemnation, a fee simple. Had it taken its land by condemnation, I think Brown might well be deemed to have impressed on such interest as might afterward revest in him a dedication to public use as a highway. In granting that land to the company after dedication there is, of course, nothing to detract from the inference to be drawn from his previous acts. The company, by accepting the grant, elected to take what Brown could give, and his grant was consistent with a previous intent to dedicate.

The suggestion, that the railroad use of thirty-three feet is incompatible with the use thereof as a highway, and, therefore, that it may be inferred that Brown did not intend to create the latter use by dedication, is not apposite. In 1835 that incompatibility does not seem to have been recognized. By the charter in question, the railroad company was authorized to acquire the turnpikes on its route, and it is well known that its railroad was constructed, and is now maintained, on such turnpikes, which were used for many years by the side of the tracks. But in the view of the case I have taken, the railroad use is admitted to be paramount and exclusive of the other use so long as it continues.

The case in hand is not, in my judgment, distinguishable from the case previously decided in respect to the dedication.

It only remains to consider the effect of the previous filing of the railroad survey upon the construction of the deeds under which plaintiff holds, and which bound her property on the side of Railroad avenue.

By the doctrine established by this court in *Jonas* v. *Salter,* 10 *Vroom* 469, such deeds are to be construed as embracing in their description all lands of the grantor within the lines of the street between the property and the centre line of the

street, unless there are express words excluding such construction, or peculiar circumstances indicating a contrary intent.

These deeds contain no words of exclusion.

The map, which was one of Brown's acts from which dedication is inferred, showed an intent to devote part of the avenue to railroad uses. Therefore, it must be inferred that he intended to retain what power was necessary to effect that purpose. But, as we have seen, it was not necessary that he should have the fee simple title. It was sufficient that he should retain the right to devote to railroad uses such width as he and the railroad company should agree upon. If the company desired more, it could have resorted to condemnation. The circumstances do not, therefore, indicate an intent to retain what was unnecessary, or to deprive his grantees of abutting lots of what was necessary to their protection. There is therefore nothing to prevent the application of the doctrine of Jonas *v.* Salter to this case.

The result is, that, upon the facts, plaintiff established her title to the land in question, and was entitled to a finding in her favor against defendant, which had encroached thereon with its track.

The judgment should be reversed, with costs, and a *venire de novo* should follow.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE.     2.

*For reversal*—DIXON, GARRISON, MAGIE, REED, BROWN, CLEMENT, COLE, SMITH.     8.