THE STATE, RICHARD TALLON, CELESTINE TALLON, JOHN J. DEVITT AND LILLIAN H. ABBETT, PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN AND THE HOBOKEN RAILROAD, WAREHOUSE AND STEAMSHIP CONNECTING COMPANY.

1. The *allocatur,* in the face of a denial or challenge of right upon final hearing, does not make even a *prima facie* case of interest or right to prosecute a writ of *certiorari.* The interest of the prosecutor must be shown affirmatively in the controversy, else he has no standing in court to question the right of his adversary.

2. When a dedication of a street for the purposes of a highway has been made, with an express reservation in writing to the donors, their heirs or assigns, of the right to designate a portion of such street or highway for railroad purposes, persons who afterwards take conveyances of plots according to the map, and agreements in writing, by which such dedication was made, endorsed upon such map, with knowledge of the reservation in the dedication, or where such reservation be contained in the conveyances, are estopped from denying the validity of an ordinance of a city, giving consent to a location of a part of such street for railroad purposes, if there remain what is necessary of the street for their protection.

3. Where the natural consequences of an ordinance will not subject the prosecutors to any taxation, nor are they possessed of any property or legal rights beyond those which will be affected in common with the remainder of the public, there exists no right in them to have a review of such ordinance by *certiorari.* If the ordinance is made the occasion for unlawful injury to the prosecutors, then such injuries are remediable by action at the suit of the injured party.

On *certiorari.*

For the prosecutors, *Abel I. Smith, Gilbert Collins* and *Leon Abbett.*

For the defendants, *James B. Vredenburgh, James F. Minturn* and *Edwin A. S. Lewis.*

Argued at February Term, 1896, before Justices LIPPINCOTT and LUDLOW.

The opinion of the court was delivered by

LIPPINCOTT, J. This writ of *certiorari* brings into this court for review an ordinance of the city of Hoboken, entitled "An ordinance of the city of Hoboken, giving consent to and authorizing the Hoboken Railroad, Warehouse and Steamship Connecting Company to make, erect, maintain and operate a railway propelled by electricity on certain streets and avenues in the city of Hoboken, and also to erect poles on certain streets and avenues in the city of Hoboken for the purpose of stringing wires thereon necessary to operate its railway with electric power."

It is not necessary to set out this ordinance at length. It provides definitely for the construction of a railroad, the course of which is partly upon private property of the railroad company or the private property of others who consent to the construction thereof, and partly across and along certain streets of the city of Hoboken. The track of the road commences at a point on private property westerly of Willow avenue; thence with a single track across Willow avenue, near its intersection with Seventeenth street; then again on private property and with a single track across Park avenue; then again over private property to the southerly line of Fourteenth street, produced, at its intersection with Hudson street; then again southerly along Hudson street, with a single track with its centre line sixteen feet westerly from the easterly house line of Hudson street, to a point thirty feet

northerly from the southerly line of Eleventh street; then southerly still along Hudson street, on a curve easterly with a radius of two hundred and thirty-five feet, to the easterly line of Hudson street; then easterly and southerly over private property to a certain point in the line of Fifth street; thence along the Roadway, along the river front, with a single track, to a point in the northerly line of Fourth street; then southerly over private property to the river front.

The railroad constructed under this ordinance will cross Willow and Park avenues, and run longitudinally along Hudson street, between Fourteenth and Eleventh streets, and on the street known as the "Roadway," between Fourth and Fifth streets, and otherwise entirely over private property.

Among the considerations for the adoption of this ordinance, it is urged that it will add to the seaport and commercial facilities of the city of Hoboken, and furnish a much greater volume of business to the city and give much more employment to its citizens. Besides, the railroad company offers to convey to the city, in consideration of the passage of this ordinance by the mayor and common council of the city, a certain plot of land for a public park, and erect proper fences around the same, and to make and maintain a paved roadway over and along its track, from the point where said track leaves Hudson street, near Eleventh street, to the southerly line of Fifth street.

The ordinance also provides that the cars of the company shall be operated by electricity, and the location of the poles and the manner in which wires shall be strung thereon, and also provides for municipal control over the conduct of the company, its tracks and appliances. The purpose of the railroad is to connect the water front of the Hudson river with the tracks of the Erie and the New Jersey Junction railroad, at or near Seventeenth street and Willow avenue, and the use to which this connection is to be devoted is the transportation of freight.

The Hoboken Railroad, Warehouse and Steamship Connecting Company is a railroad corporation organized under

the General Railroad law of this state, and no question is made against the regularity of its organization.

The charter of the city of Hoboken (*Pamph. L.* 1861, *p.* 523), by its eleventh section, provides " that it shall be lawful for the council, by general ordinance, to grant permission to any person or persons or corporation to lay railroad tracks to run rail cars thereon, in or over any street or highway within said city, under such licenses, conditions and restrictions as the said council may think proper, and to alter, change or revoke the same at pleasure, provided that no such granting or permission shall be made or given until a majority of the property-owners along the line of such street or highway shall have first given their consent in writing for the railway tracks to be laid."

The power of the legislature to pass such an act as this seems to be well established by the decisions in this state. *Morris and Essex Railroad Co.* v. *Newark*, 2 *Stock.* 352; *Long Branch Commissioners* v. *West End Railroad Co.*, 2 *Stew. Eq.* 569, and cases cited.

The proceedings preliminary to the passage of this ordinance show that a majority of the property-owners along the parts of the streets or avenues upon which this railroad is to be constructed have given their consent in writing for such tracks to be laid on such parts of such streets.

The conclusion which has been reached in the case, as presented by the evidence, is that the prosecutors have no standing in this court to prosecute this writ of *certiorari*. The right of each of the prosecutors has been distinctly challenged in the evidence taken in this case, and it has been earnestly insisted upon, by the defendants at the argument, that the prosecutors have no legal *status* sufficient to prosecute this writ, and that no such *status* appears either in the record, the proceedings of the council or in the evidence, but on the contrary it affirmatively appears that they are without any sufficient interest or grievance to maintain a writ of *certiorari*.

The principle established is that " when a judge is called upon, in a proceeding *ex parte*, to allow a *certiorari*, he must

be reasonably assured of two things—*first,* that there is some illegality to be complained of; and *second,* that the party seeking the remedy is entitled to it—but the *allocatur* no more adjudges the one fact than the other." *West Jersey Traction Co.* v. *Camden,* 29 *Vroom* 362. The *allocatur,* in the face of a denial of the interest or right to prosecute, does not make even a *prima facie* case where the prosecutors fail to show their own interest in the controversy. The interest of the prosecutors must be shown affirmatively in the controversy, else they have no standing in court to question the right of their adversaries. *West Jersey Traction Co.* v. *Camden, supra.*

Richard Tallon and Celestine Tallon, his wife, two of the prosecutors, are the owners of a plot of land on the corner of Washington and Twelfth streets, the property abutting upon both streets, but not upon any street upon which, under this ordinance, the railroad track is to be constructed, unless it be that Twelfth street should be produced across Hudson street. Twelfth street, running easterly, ends at Hudson street, and does not continue across it or intersect it. Washington street is a thoroughfare of the city, and intersects numerous streets running easterly and westerly. Under the evidence, the construction of the railroad, under the ordinance, affects them nowise differently from any other property-owner of the city.

Lillian H. Abbett is the owner of a lot of land on Henderson street, but it is situated over seven hundred feet southerly from the point where the track of the proposed railroad turns off Hudson street on its route to the water front. There is nothing in the evidence which shows that construction of the railroad will affect her property differently from that of any other citizen of Hoboken.

The plot of land belonging to John J. Devitt, one of the prosecutors, is a little differently situated, but I do not think it can be said that the railroad runs at all along the front of his property. His plot is on the southwest corner of Hudson and Eleventh streets. Eleventh street, running easterly, ends at Hudson street. The track of the road is upon the east-

erly side of Hudson street, and, running southerly, passes off Hudson street thirty feet northerly of the southerly line of Eleventh street if produced across Hudson street, and is, according to the evidence, to be laid close to the easterly line of Hudson street. It can hardly be said that Devitt is an abutting owner, unless it be said that the curve of the road, from the street to private property, is in view of the premises. As shown by the maps and evidence, no part of the track will be in front of any portion of his lot.

These facts, as presented by the evidence, reveal that none of the prosecutors have that legal *status* required by law, and which enables them to question the validity of this ordinance, which operates only as a consent on the part of the public that the defendants may use these parts of streets for the construction of this railroad. If the defendants are operating upon any other ground, or creating a public nuisance in these streets, then the remedy of the prosecutors is in some other proceeding.

The ordinance certified may be unauthorized or void, and any railway constructed under it may be a public nuisance, but even these results do not give the prosecutors the right to invoke the aid of this court, by the writ of *certiorari*, to set aside the illegal proceeding.

This ordinance, in its natural consequences, will not subject the prosecutors to any taxation, nor are they possessed of any property or legal rights beyond those which will be affected in common with the remainder of the public. *Kean* v. *Bronson et al.*, 6 *Vroom* 468, 470; *Montgomery et al.* v. *Trenton*, 7 *Id.* 79, 85.

These streets are all provided with outlets to every portion of the city, so far as the prosecutors are concerned, without passing along the street upon which this track is to be constructed.

In *Jersey City* v. *Traphagen*, 24 *Vroom* 434, in the Court of Errors and Appeals, it was held that " *certiorari* to review the action of public officials will not lie in favor of prosecutors who have no personal property interest to be especially

and immediately .affected by the action complained of." This
was a case in which the mayor and aldermen of Jersey City
passed an ordinance granting a railroad the use of the side-
walk of a street opposite which the prosecutors were the
owners of abutting properties, upon which there were houses
belonging to the prosecutor. The case declared that the prose-
cutor suffered no special injury beyond those which affected
him in common with the remainder of the public.

In *Dodge* v. *Pennsylvania Railroad Co.*, 16 *Stew. Eq.* 351,
affirmed in 18 *Id.* 366, the same principle was applied, arising
out of the vacation of Greene street, in Jersey City, for the
use of the railroad.

Dodge was an abutting owner on another part of the street
which was so vacated. The bill was for an injunction and
was dismissed, which dismissal was affirmed by the Court of
Errors and Appeals.

In the case of Vanderbeck *v.* Jersey City, the city of Jersey
City vacated a portion of Greene street for the purpose of
allowing the Pennsylvania railroad to elevate the tracks of
their road. The prosecutors were the owners of valuable
property abutting on a portion of this street, a short distance
from the part vacated. 13 *N. J. L. J.* 346. The Supreme
Court denied the writ, on the ground that the rights of the
prosecutors were only those of the other members of the public,
and these were the only rights extinguished or affected.

If the privileges granted by the statute under which the
defendants are incorporated, and the ordinance by virtue of
which the road is to be constructed operates, or are made the
occasion for unlawful injury to the prosecutors, then such in-
juries are remediable by action at the suit of the injured
party. *Roebling* v. *Trenton Passenger Railway Co.*, 29 *Vroom*
666 ; *United New Jersey Railroad Co.* v. *National Docks Co.*,
28 *Id.* 523.

Upon these grounds the conclusion is that the prosecutors
have no standing in this court to dispute the validity of the
ordinance.

But there is also another ground of denial which, as it

seems to me, effectually disposes of the right of the prosecutors to review this ordinance by *certiorari*. I think all the prosecutors are estopped from denying the validity of the ordinance granting the consent to the railroad company to lay tracks in the streets named in the ordinance.

On or about July 28th, 1890, the Hoboken Land and Improvement Company, Martha B. Stevens and Mary P. Lewis, the then owners of the tract of land through which these streets now are laid, filed in the register's office of the county of Hudson, a map of a certain tract of land upon which the streets, along which this railroad is to be constructed longitudinally, were delineated. Before that time these streets had not been laid out and were not public streets. The map was entitled "A map of property belonging to the Hoboken Land and Improvement Company and others, Hoboken, Hudson county, N. J." Upon the map is the following note: "This map has been made and ordered to be filed in the office of the register of deeds and mortgages of Hudson county, by direction of the board of directors of the Hoboken Land and Improvement Company, Martha B. Stevens and Mary P. Lewis, owners of the several tracts of land shown hereon, upon condition that the several streets laid out and designated thereon are dedicated as public highways for passage over the same by ordinary vehicles and foot passengers only, subject to the right of said company, Martha B. Stevens and Mary P. Lewis to lay tracks for horse cars, steam cars and elevated railways, to erect telegraph poles, electric light poles and the right to operate and use the same, and also subject to the right to lay, maintain and repair gas, sewer and water-pipes therein. All of which rights are expressly reserved unto the Hoboken Land and Improvement Company, its successors and assigns, Martha B. Stevens and Mary P. Lewis, their heirs and assigns forever, as fully and entirely as if no dedication of said lands to any public use whatsoever had ever been made. In witness whereof, the Hoboken Land and Improvement Company hath caused its corporate seal to be hereto affixed, and these presents to be signed by its presi-

dent, and said Martha B. Stevens and Mary P. Lewis· have hereto set their hands and seals this twenty-eighth day of July, 1890."

By reference to this map it will be seen that the respective plots belonging to the prosecutors were included in the tract of land included in this map, upon which the streets in which the track of the railroad company is to be laid, are shown. The deeds of conveyance to the prosecutors were all made subsequent to the filing of this map, and with knowledge thereof. The deed from Martha B. Stevens, who was the owner of the plot in which the lands of all the prosecutors were situated, to Richard Tallon and Celestine, his wife, was made in 1893. The deed to Lillian H. Abbett was made in the year 1892. The agreements under which Mr. Devitt holds possession were made in the years 1891 and 1895. The deed to Mr. and Mrs. Tallon, and the agreements with Devitt, contain a reservation of the right of the grantor in the streets in the same language in which the dedication was made on and by the map, both expressly reserving this right of laying railroad tracks in these streets.

These streets had never been laid out by any action of the city, and no dedication of them to public use had existed previous to the filing of the map to which reference has been made, in the year 1890. Such dedication constitutes the only right of the city of Hoboken in such streets. The power and jurisdiction over these streets was only obtained by such dedication.

On November 2d, 1895, the Hoboken Land and Improvement Company, Martha B. Stevens and Mary P. Lewis, by writing under their hands and seals, granted to the Hoboken Railroad, Warehouse and Steamship Connecting Company the right to lay rails and construct the railroad in the streets in accordance with the ordinance of the city.

Under these circumstances the prosecutors are estopped from denying the validity of the ordinance.

In the case of *Ayres* v. *Pennsylvania Railroad Co.,* 19 *Vroom* 44, it was held that " the dedication of land for public

use as a highway may be made subject to the right to designate a portion thereof for use for railroad purposes, and when such portion has been designated and devoted to railroad purposes, the public use will be suspended and remain suspended so long as that portion is devoted to such purposes, and that a conveyance of land along such highway, prior to the designation of a portion for railroad purposes, will pass the grantor's title to the centre of the street, subject to the public easement, and the reserved right to devote to use for railroad purposes." The same result arises, *a fortiori*, by a conveyance after such designation. The dedication here was of the whole street for a highway, reserving the right to impose upon some portion of it the burden of a railroad use, and the ordinance in favor of the defendant railroad company, and the grant to them in accordance with such ordinance can be taken as such designation. So soon as this designation was made, the easement of the public highway would be suspended over it, and continue suspended so long as it was devoted to such purpose.

A dedication of a highway to the public may be made *cum onere*. *State* v. *Society*, 15 *Vroom* 502.

Mr. Justice Magie, in delivering the opinion in the case of *Ayres* v. *Pennsylvania Railroad Co.*, 23 *Vroom* 405, 412, said : " The map, which was one of Brown's acts, from which dedication is inferred, showed an intent to devote part of the avenue to railroad uses ; therefore, it must be inferred that he intended to retain what power was necessary to effect that purpose. * * * It was sufficient that he should retain the right to devote to railroad uses such width as he and the railroad company should agree upon. If the company desired more, it could have resorted to condemnation. The circumstances do not, therefore, indicate an intent to retain what was unnecessary or to deprive his grantees of abutting lots of what was necessary to their protection." See *Salter* v. *Jonas*, 10 *Id.* 469.

If the use of the soil as a way be offered by the owner under given conditions and subject to certain reservations, and if the public accept the use under such circumstances, there

can· be no injustice in holding them to the terms on which the benefit was conferred. *State* v. *Society,* 15 *Vroom* 502, 506 ; *Avis* v. *Vineland,* 27 *Id.* 474, 478.

The city having given its consent, by ordinance, to the devotion of a portion of these streets for a railroad purpose, and the route having been clearly and specifically defined with the portion taken, the prosecutors are estopped from denying the right of their adversaries to the use of the streets for such purposes. The maps and agreements by which this dedication was made were entirely within their knowledge at the time of the execution and delivery of these deeds. In the convey-ances of three of the prosecutors, the terms of the dedication were expressly included, excluding their right to object to the devotion of a portion of these streets to railroad purposes, and they all are, therefore, without the standing which entitles them to the benefit of this writ to review the ordinance which grants the consent of the public to the construction of the railroad in accordance with its terms.

The writ must be dismissed, with costs.